UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MILTON CACERES a/k/a MILTON CANALES MOLINA,<br>    *Plaintiff,*<br><br>    v.<br><br>WILLIAM JOYCE, *et al.*,<br>    *Defendants.* | No. 25 Civ. 1844 (LAK) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE
OR DISMISS FOR IMPROPER VENUE**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL HISTORY ............................................................................. 1

ARGUMENT ..................................................................................................................... 3

    I.  Under the *Preiser* rule, this action is a proper vehicle for the relief Mr. Caceres seeks, which is outside of the "core" of habeas corpus. ............................................................... 3

        A.  The relief Mr. Caceres does not necessarily imply the invalidity of his confinement or shorten its duration. ...................................................................................... 3

        B.  The *Preiser* rule applies to challenges to immigration detention. ............................... 6

        C.  The immediate custodian rule does not apply. ............................................................. 9

    II.  The Southern District of New York is the proper venue for this action. ........................... 12

CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITES

**Cases**

*Abrego Garcia v. Noem*,
 No. 25-1345 2025 WL 1021113 (4th Cir. Apr. 7, 2025) ....................................................... 2

*Al-Qahtani v. Trump*,
 443 F. Supp. 3d 116 (D.D.C. 2020) ................................................................................... 11

*Aracely, R. v. Nielsen*,
 319 F. Supp. 3d 110 (D.D.C. 2018) ................................................................................. 6, 8

*Calderon v. Sessions*,
 330 F. Supp. 3d 944 (S.D.N.Y. 2018) ................................................................................ 10

*D.V.D. v. DHS*,
 No. 25-10676 (BEM), 2025 WL 1142968 (D. Mass. Apr. 18, 2025) ................................. 2

*Davis v. United States Sentencing Comm'n*,
 716 F.3d 660 (D.C. Cir. 2013) ............................................................................................ 9

*Dixon v. Reid*,
 744 F. Supp. 3d 323 (S.D.N.Y. 2024) ................................................................................ 12

*Doe v. Garland*,
 109 F.4th 1188 (9th Cir. 2024) ............................................................................................ 7

*Edwards v. Balisok*,
 520 U.S. 641(1997) .............................................................................................................. 4

*Fuentes v. Choate*,
 No. 24-cv-1377 (NYW), 2024 WL 2978285 (D. Col. June 13, 2024) ............................... 7

*Golding v. Sessions*,
 No. 18-cv-3036 (RJS), 2018 WL 6444400 (S.D.N.Y. Dec. 6, 2018) ............................... 10

*Khalil v. Trump*,
 No. 25-cv-1935 (JMF), 2025 WL 849803 (S.D.N.Y. March 15, 2025) ........................... 11

*Matias Madera v. Decker*,
 No. 18-cv-7313 (AKH), 2018 WL 10602037 (S.D.N.Y. Sept. 18, 2018) ........................ 10

*Matter of Guerra*,
 24 I&N Dec. 37 (BIA 2006) .............................................................................................. 11

*Nance v. Ward*,
 597 U.S. 159 (2022) ...................................................................................................... 7, 11

*Padilla v. Rumsfeld*,
 542 U.S. 426 (2003) ................................................................................................... 10

*Preiser v. Rodriguez*,
 411 U.S. 475 (1973) ............................................................................................. passim

*Rodriguez Sanchez v. Decker*,
 No 18-cv-8798 (AJN), 2019 WL 3840977 (S.D.N.Y. Aug. 15, 2019) ............................ 10

*Salahi v. Obama*,
 No. 05-cv-0569 (RCL), 2015 WL 9216557 (D.D.C. Dec. 17, 2015) ............................. 11

*Singh v. Decker*,
 No. 20-cv-9089 (JPC), 2021 WL 23328 (S.D.N.Y. Jan. 4, 2021) ............................. 10, 11

*Slade v. City of New* York,
 No. 24-cv-0514 (LTS), 2024 WL 4149872 (S.D.N.Y. Sept. 5, 2024 ) ............................ 13

*Trump v. J.G.G.*,
 No. 24A931, 2025 WL 1024097 (U.S. Apr. 7, 2025) ............................................. 6, 7, 11

*Valez-Chavez v. McHenry*,
 549 F. Supp. 3d 300 (S.D.N.Y. 2021) .......................................................................... 9, 10

*Wilkinson v. Dotson*,
 544 U.S. 74 (2005) ............................................................................................. 3, 4, 5, 9

*Wyndham Associates v. Bintliff*,
 398 F.2d 614 (2d Cir. 1968) ........................................................................................... 13

*You v. Nielsen*,
 321 F. Supp. 3d 451 (S.D.N.Y. 2018) .............................................................................. 10

**Statutes**

5 U.S.C. § 706(2) ................................................................................................................ 1

8 U.S.C. § 1231(a)(6) ....................................................................................................... 2, 7

28 U.S.C. § 1391(e)(1) ....................................................................................................... 12

28 U.S.C. § 1406(a) ........................................................................................................... 13

42 U.S.C. § 1983 .................................................................................................................. 4

50 U.S.C. § 21 ...................................................................................................................... 6

**INTRODUCTION**

Plaintiff Milton Caceres ("Plaintiff" or "Mr. Caceres") submits this memorandum of law in opposition to Defendants' motion to dismiss or transfer this action for lack of venue. Mr. Caceres does *not* ask this Court to order his release. *See* Compl. at 21. Instead, he asks the Court (1) to order that Defendants provide him a constitutionally adequate bond hearing at which an Immigration Judge can evaluate the propriety of his continued detention, and (2) to grant relief under the Administrative Procedure Act, 5 U.S.C. § 706(2), ("APA") setting aside Defendants' decision to deny his request for discretionary release from custody.

In determining whether venue is proper in this District, the central question before the Court is whether these claims lie within the "core" of habeas corpus, which the Supreme Court has defined as relief that necessarily invalidates confinement or necessarily shortens its duration. *See, e.g*, *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973). The relief Mr. Caceres seeks does not necessarily—or even indirectly—imply the invalidity of his confinement or shorten its duration. Rather, it merely requires Defendants to comply with the Constitution and with agency law in exercising their own judgment as to whether Mr. Caceres should remain detained. For that reason, his claims are outside of the "core" of habeas. The Court should therefore deny Defendants' motion and retain jurisdiction over this matter.

**FACTUAL AND PROCEDURAL HISTORY**

Mr. Caceres was the victim of persecution by rival gangs and by state authorities in El Salvador during a period that stretched from 2005 to 2013. *See* Compl. ¶¶33-39. Recognizing the severity of this persecution and the grave risk to his life if he were returned to El Salvador, an Immigration Judge granting him deferral of removal under the United Nations Convention Against Torture ("CAT") on September 3, 2024. *Id*. ¶49. The Department of Homeland Security ("DHS")

1

appealed that grant on September 4, 2024, and the appeal remains pending at the Board of Immigration Appeals ("BIA"). *Id*. ¶50. Because his removal has been deferred, Mr. Caceres cannot be removed to El Salvador. *See* 8 C.F.R. § 208.17(a); *see also Abrego Garcia v. Noem*, No. 25-1345, 2025 WL 1021113, at *6 (4th Cir. Apr. 7, 2025) (Wilkinson, J., concurring) (discussing protections under the similar provision for withholding of removal). A separate nationwide preliminary injunction bars Mr. Caceres's removal to any third country without an opportunity to express a fear of torture. *See D.V.D. v. DHS*, No. 25-10676 (BEM), 2025 WL 1142968, at *24 (D. Mass. Apr. 18, 2025).

Mr. Caceres has been detained pursuant to 8 U.S.C. § 1231(a)(6) in Defendants' custody for over 37 months, most of that time at the Central Louisiana ICE Processing Center ("CLIPC") in Jena, Louisiana. *See* Compl. ¶52. His detention has never been evaluated by a neutral decisionmaker. *See, e.g.*, *id.* ¶67. Moreover, in reviewing his detention as required by regulation, Immigration and Customs Enforcement ("ICE") has failed to apply its Release Policy, which favors the release of noncitizens like Mr. Caceres who have been granted withholding or deferral of removal. *Id*. ¶58.

On March 5, 2025, Mr. Caceres initiated this civil action seeking an adequate procedure by which to challenge his detention, *i.e.*, a bond hearing at which the government bears the burden to justify his continued detention to an Immigration Judge, and the vacatur of ICE's decision to continue detaining him without applying its policy favoring release of individuals in his position. *See* Compl. ¶¶66-85.

The parties requested, and the Court ordered, a briefing schedule on Defendants' present motion to dismiss or transfer for lack of venue. *See* ECF No. 17.

# ARGUMENT

I. **Under the *Preiser* rule, this action is a proper vehicle for the relief Mr. Caceres seeks, which is outside of the "core" of habeas corpus.**

Venue is proper in this District. Mr. Caceres is not required to bring his claims through a habeas corpus petition, which would be the only basis to transfer this action to the district in which he is confined. To determine whether Mr. Caceres's suit must be brought in habeas, the Court should apply the *Preiser* rule, which defines the "core" of habeas corpus. As the Supreme Court has frequently repeated, an incarcerated person must proceed by habeas *only* if the relief they seek is within the "core" of habeas corpus—that is, if relief that would "necessarily imply the invalidity of confinement or shorten its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). Since the relief Mr. Caceres seeks has no direct bearing on the validity of his custody or detention, he does not need to bring his claims through habeas or to bring suit in the district in which he is confined. Rather, this District, where the relevant decisionmakers are located and the relevant facts occurred, is appropriate.

A. **The relief Mr. Caceres does not necessarily imply the invalidity of his confinement or shorten its duration.**

The relief Mr. Caceres seeks before this Court does not necessarily—or even indirectly—imply the invalidity of his confinement or shorten its duration. Mr. Caceres argues here that due process entitles him to a hearing at which the Executive Office for Immigration Review ("EOIR") can determine whether his continued detention is justified, wholly independently of any determination he asks this Court to make. He also argues that ICE's failure to abide by its Release Policy is a violation of the APA. Neither claim asks the Court to pass judgement on the legality of his custody or on the validity of his detention, but rather to require the agencies to conduct their own discretionary review in conformity with the Constitution and the ICE's release policy.

3

This maxim that habeas is the exclusive vehicle to challenge the validity or duration of confinement comes from a line of cases in which courts have been asked to determine whether collateral attacks to criminal confinement could be brought as actions pursuant to 42 U.S.C. § 1983 or whether they had to brought through habeas. The Supreme Court first considered this issue in *Preiser*, 411 U.S. There, the Court held that habeas was the only proper vehicle to challenge the constitutionality of prison disciplinary proceedings that had led to the deprivation of plaintiffs' good-time credits, extending their confinement. *Id*. at 476. As the Court noted, the relief sought would necessarily mean either "immediate release from prison" or the "shortening" of the plaintiffs' term of confinement, *id*. at 482, which the Court defined as "the core of habeas corpus." *Id*. at 487.

Over the next thirty years, the Court broadened the *Preiser* rule to require habeas for any claim that would "necessarily imply" immediate or speedier release. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (finding that habeas was the only proper vehicle in a suit seeking only damages and challenging the revocation of good-time credits without adequate process). At bottom, "the Court [remained] focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement— either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson*, 544 U.S. at 81.

*Wilkinson*, one of the Court's more recent forays into the subject, offers a helpful guide to understanding why Mr. Caceres's claims are outside of the "core" of habeas corpus. In *Wilkinson*, two plaintiffs sought new parole hearings "conducted under constitutionally proper procedures," claiming that their prior parole proceedings were tainted by Ohio's retroactive application of new

4

parole guidelines. *Id.* at 77. The Court held that the plaintiffs did *not* need to proceed by habeas because the relief they sought would only "render invalid the state procedures used to deny parole eligibility [or] suitability"—relief that the Court contrasted with "an injunction ordering [] immediate or speedier release," *i.e.*, the "core" of habeas. *Id*. at 82. As the Court stated,

> Success for [Plaintiff] Dotson does not mean immediate release or a shorter stay in prison; it means at most new eligibility review, which may speed consideration of a new parole application. Success for [Plaintiff] Johnson means at most a new parole hearing at which parole authorities may, in their discretion, decline to shorten his prison term.

*Id*. at 75.[1] The relief Mr. Caceres seeks is analogous. He does not seek an injunction ordering his release. Rather, like the *Wilkinson* plaintiffs, relief for Mr. Caceres "means at most" a bond hearing at which the relevant authorities may, in their discretion, determine that he should be released. Like the *Wilkinson* plaintiffs, Mr. Caceres merely asks that this review occur and that the relevant authorities abide by the Constitution and agency law. The relief he seeks is therefore outside of the "core" of habeas.

Although Defendants state that this action "seeks only a bond hearing or release," Brief for Resps. at 5, Mr. Caceres simply has not asked this Court to order his release, even in the alternative. His straightforward challenge to the procedures by which the agencies evaluate his continued detention does not fall within the "core" of habeas corpus, and are therefore properly brought before this Court. *Cf. Preiser*, 411 U.S. at 484 ("It is clear, not only from the language of §§ 2241(c)(3) and 2254(a), but also from the common-law history of the writ, that the essence of

---

[1] Notably, the Court specifically considered and rejected the dissent's argument that that "*Preiser* covers claims that simply "'*relate* . . . to' the duration of confinement." *Wilkinson*, 544 U.S. at 81 (quoting *id.* at 90 (Kennedy, J., dissenting)).

habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").

### B. The *Preiser* rule applies to challenges to immigration detention.

*Preiser* and its progeny offer the appropriate test for determining whether Mr. Caceres's claim lie at the "core" of habeas corpus. The *Preiser* rule applies with equal force to challenges to immigration detention, even if the procedures and statutes in question differ from the typical *Preiser*-line case. *Trump v. J.G.G.*, No. 24A931, 2025 WL 1024097 (U.S. Apr. 7, 2025), a recent decision on which Defendants seek to rely, supports this contention, as does *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110 (D.D.C. 2018), the case that has most closely addressed the question before the Court.

*J.G.G.* is the first Supreme Court case to confirm that the *Preiser* rule applies to challenges to immigration detention, the proposition that Mr. Caceres advances before this Court. *J.G.G.* moreover supports the contention that Mr. Caceres's request for a bond hearing is outside of the "core" of habeas. The *J.G.G.* Court sought to determine whether plaintiffs challenging their removals under the Alien Enemies Act ("AEA"), 50 U.S.C. § 21, were required to do so through habeas. To make that determination, the Court applied *Preiser* to identify the "core" of habeas corpus, looking at the practical implications of the relief plaintiffs sought, rather than the formal causes of actions in their complaint.

Under *Preiser*, the Court concluded that that relief would necessarily imply the invalidity of their confinement. *Cf.* Brief for Resps. at 5 n.3 (noting that the *J.G.G.* plaintiffs brought eight non-habeas claims, along with a habeas claim, and specified that they were not expressly seeking release). Quoting its most recent recitation of the *Preiser* rule, the Court stated: "Because [plaintiffs'] claims for relief 'necessarily imply the invalidity' of their confinement and removal

6

under the AEA, their claims fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *J.G.G.*, 2025 WL 1024097, at *1 (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). Defendants note that the Court looked past "whether the detainees formally request[ed] release," but the Court was simply highlighting that it needed to focus on the practical effect of granting relief, rather than on the literal words used in the causes of action. *See id*. Mr. Caceres similarly asks this Court to consider the practical effect of the relief of seeks, which leaves it to the agencies to determine whether to continue detaining him. *Cf. Fuentes v. Choate*, No. 24-cv-1377 (NYW), 2024 WL 2978285, at *12 (D. Col. June 13, 2024) ("Insofar as [petitioner] seeks injunctive relief in the form of her immediate release from ICE custody, the Court finds that [her] Rehabilitation Act claim is simply a repackaged habeas request."). According to the *J.G.G.* Court, a decision invalidating the application of the AEA to plaintiffs would necessarily invalidate their confinement pursuant to the statute. Conversely, a decision requiring a bond hearing or a new evaluation of Mr. Caceres's release request will by no means invalidate his detention pursuant to 8 U.S.C. § 1231(a)(6).

As this application of the *Preiser* rule shows, Mr. Caceres's claims are outside of the "core" of habeas corpus. The relief Mr. Caceres seeks is not release—even in the alternative[2]—and would not imply the invalidity of his confinement. If this Court determines, as it should, that he must be

---

[2] Last year, the Ninth Circuit held that a habeas petition seeking release as an alternative to a bond hearing brought a "core" claim. *See Doe v. Garland*, 109 F.4th 1188, 1193-94 (9th Cir. 2024). The determinative factor was that the petitioner sought release at all, regardless of whether it was the primary relief sought or alternative relief as part of a conditional order. *See id*. ("Absent his requested bond hearing, Doe's petition requests that the district court 'order his release within fourteen days' . . . . Doe seeks 'typical habeas relief' in asking for his release should Respondents fail to provide him with an individualized bond hearing.") (citation omitted). The court had no occasion to consider whether a request for a bond hearing, standing alone, is within the "core" of habeas. *See id*. As Mr. Caceres makes clear, it is not.

afforded a bond hearing and that ICE failed to adhere to its release policy, it will not be ruling on whether Mr. Caceres should remain in custody or for how long. Its only intervention will be to require that Defendants follow the Constitution and agency law when they independently determine if Mr. Caceres's detention should continue. The Court should follow *J.G.G.* in applying the *Preiser* rule to this immigration action and, like the *J.G.G.* Court, should make its determination based on the practical implications of the relief Mr. Caceres seeks, which—unlike the relief in *J.G.G.*—would not necessarily invalidate his detention.

In addition to *J.G.G.*, the court to have most squarely addressed the question presented here—whether a request for a bond hearing must be brought via habeas—came to the conclusion that Mr. Caceres advances. *See Aracely, R.* 319 F. Supp. 3d at 126-27. *Aracely R.* is particularly instructive because it involved largely the same relief sought by Mr. Caceres. In *Aracely, R.*, Judge Contreras of the District of Columbia properly permitted plaintiffs—asylum seekers subject to mandatory detention—to challenge several aspects of their confinement through a civil complaint, rather than through a habeas petition. *See id*. Like Mr. Caceres, the *Aracely, R.* plaintiffs sought an order *both* "granting them bond hearings before immigration judges," which they argued were required by the Constitution, *and* "compelling [d]efendants to comply with [an] official [ICE] directive." *Id*. at 130 In that case, the ICE directive in question provided a framework for adjudicating requests for discretionary 'parole' under 8 C.F.R. § 212.5, the regulatory mechanism for release of "arriving aliens." *Id*. at 122. Thus, the *Aracely R.* plaintiffs sought relief that is essentially coterminous with the relief Mr. Caceres seeks—a bond hearing required by the Constitution and adherence to an ICE policy governing consideration of their release from mandatory detention.

Judge Contreras correctly concluded that plaintiffs were not "required" to bring their claims by way of a habeas petition. *Id*. at 126. As he noted, "[i]f Plaintiffs are successful and this Court enjoins Defendants from [violating the ICE directive] and requires that Plaintiffs be given bond hearings, that ruling would not necessarily imply that their confinement is invalid or otherwise should be shorter." *Id*. (citing *Davis v. United States Sentencing Comm'n*, 716 F.3d 660, 666 (D.C. Cir. 2013) and *Wilkinson*, 544 U.S. at 82). Given how closely *Aracely, R.* tracks the relief Mr. Caceres (more closely than perhaps any other case), it is a particularly useful guide. The Court should follow Judge Contreras in holding that this civil complaint is a proper vehicle for Mr. Caceres's request for a bond hearing and challenge to ICE's violation of its release policy.

*Valez-Chavez v. McHenry*, 549 F. Supp. 3d 300 (S.D.N.Y. 2021), which Defendants raise in a footnote, stands for the similar, but distinct proposition that actions that *may* be brought in habeas—including a request for a bond hearing—can also be brought under the APA. *Id*. at 306 (determining that habeas corpus is not a special review procedure that would preclude APA review). Unlike *Aracely R.*, *Valez Chavez* did not raise the question posed here of whether a procedural due process claim seeking a bond hearing must be brought in habeas. However, in allowing a request for a bond hearing to proceed via a civil complaint outside the district of confinement, the case provides important support for Mr. Caceres's contention that his request for a bond hearing is beyond the "core" of habeas and can therefore be brought in this District through this action.

### C.   The immediate custodian rule does not apply.

In Defendants' view, rather than applying the *Preiser* rule, the Court should base its decision on a different rule not applicable here—the immediate custodian rule. But that rule is only operative where a prisoner proceeds via habeas. As Defendants accurately state, "[w]henever a §

9

2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Padilla v. Rumsfeld*, 542 U.S. 426, 447 (2003). The *Padilla* Court distinguished between "core" habeas claims that must be filed in the district of confinement and "non-core" claims that can be brought in habeas outside the district of confinement. *Id.* at 435. The Court did *not*, however, address whether non-core claims must be brought in habeas. *Cf. Valez Chavez*, 549 F. Supp. 3d at 301. *Presier* and its progeny, as discussed above, provide the answer to that question.[3] Since the "core" of habeas is coterminous with claims that "necessarily imply the invalidity" of detention, non-core claims like those raised by Mr. Caceres are beyond the scope of the immediate custodian rule.

Defendants cite several cases in which courts in this District applied the immediate custodian rule to habeas petitions challenging immigration detention. *See, e.g.*, *Singh v. Decker*, No. 20-cv-9089 (JPC), 2021 WL 23328, at *5 (S.D.N.Y. Jan. 4, 2021) ("*Padilla*'s default rule for 'core' habeas petitions is equally applicable in the immigration context."); *Golding v. Sessions*, No. 18-cv-3036 (RJS), 2018 WL 6444400, at *2 (S.D.N.Y. Dec. 6, 2018). These courts did *not*, however, apply the *Preiser* rule to determine whether the claim here—for a bond hearing—must be brought in habeas.[4] But it is clear that, under *Preiser*, a bond hearing is not within the "core" of

---

[3] Although the Court did not reach the merits of the petition, it appears that the petitioner's claim that "the President [did not] possess authority to detain [him] militarily," *Padilla*, 542 U.S. at 430, would necessarily imply the invalidity of his detention and would therefore be required to proceed via habeas under *Preiser* and its progeny.

[4] Where detained noncitizens have proceeded by habeas, courts in this District have not uniformly held that the immediate custodian rule applies. For example, in *Calderon v. Sessions*, Judge Crotty concluded that the immediate custodian rule did not apply where the petitioner—who sought release and did not seek a bond hearing—brought "non-core" claims that predominated over his "core" claims. 330 F. Supp. 3d 944, 952-54 (S.D.N.Y. 2018); *see also You v. Nielsen*, 321 F. Supp. 3d 451, 460-61 (S.D.N.Y. 2018); *Matias Madera v. Decker*, No. 18-cv-7313 (AKH), 2018 WL 10602037, at *2-3 (S.D.N.Y. Sept. 18, 2018); *Rodriguez Sanchez v. Decker*, No 18-cv-8798 (AJN), 2019 WL 3840977, at *2-3 (S.D.N.Y. Aug. 15, 2019).

habeas. Following *J.G.G.*, moreover, it is clear that the Court should first apply the *Preiser* rule to determine whether Mr. Caceres's claims are squarely within the "core" of habeas.

Only if Mr. Caceres's claims fall within the core of habeas (which they do not) would it be appropriate to apply the immediate custodian rule. Concluding otherwise because a bond hearing "may ultimately result in . . . release," *Singh*, 2021 WL 23328, at *3, would nullify *Preiser* by casting aside its focus on the probability that the relief requested will invalidate confinement. *See, e.g.*, *Nance*, 597 U.S. at 168 ("[W]e have underscored that the implication [that confinement is invalid] must be *"necessar[y]."*) (quoting *Wilkinson*, 544 U.S. at 81) (emphasis and second alteration in original); *Salahi v. Obama*, No. 05-cv-0569 (RCL), 2015 WL 9216557, at *2 (D.D.C. Dec. 17, 2015) (agreeing that a claim by a Guantanamo detainee for a hearing before a Periodic Review Board "does not sound in habeas" because it "*would only possibly* result in [his] release") (emphasis added).[5]

Defendants also cite Judge Furman's recent decision in *Khalil v. Trump*, No. 25-cv-1935 (JMF), 2025 WL 849803 (S.D.N.Y. March 15, 2025). But that decision is also inapposite because the primary relief Khalil sought—and continues to seek—is immediate release, so his claim was unmistakably within the "core" of habeas. As Judge Furman noted, "[l]ower courts [have] held

---

[5] Like proceedings before Periodic Review Boards, custody review by an Immigration Judge or by an ICE official is discretionary. *See, e.g.*, *Matter of Guerra*, 24 I&N Dec. 37, 39 (BIA 2006) ("[T]he Attorney General [has] the authority to grant bond if he concludes, in the exercise of discretion, that the alien's release on bond is warranted."); *cf. Al-Qahtani v. Trump*, 443 F. Supp. 3d 116, 127 (D.D.C. 2020) (distinguishing Periodic Review Boards from Mixed Medical Commissions ("MMC"), another form of review available to Guantanamo detainees, because MMCs "must" release a detainee "if certain criteria are met" and therefore do not "exercise [] discretion.").

11

that [the immediate custodian rule applies] to habeas petitions filed by people held in immigration detention, such as Khalil, *at least to the extent that they seek release*." *Id.* at *1 (emphasis added).

\*   \*   \*

For the reasons above, Mr. Caceres does not seek relief within the "core" of habeas. The relief he seeks—an order requiring immigration authorities conduct a bond hearing and vacating their prior denial of his release request—does not invalidate the fact or duration of his confinement, placing it firmly outside the "core" as defined by the Supreme Court.

## II.     The Southern District of New York is the proper venue for this action.

If the Court agrees with Mr. Caceres that he is not required to proceed in habeas, it should apply 28 U.S.C. § 1391(e)(1) to conclude that he has made a prima facie showing that venue is proper in the Southern District of New York. *See, e.g.*, *Dixon v. Reid*, 744 F. Supp. 3d 323, 330 (S.D.N.Y. 2024) (describing standard for venue on a motion to dismiss). (citation omitted). Section 1391(e)(1) governs venue in a civil action in which, as here "a defendant is an officer or employee of the United States of an agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States." Defendants are all agency officers or employees sued in their official capacity. Venue is therefore proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). Defendant Joyce resides in this District since the ICE's New York Field Office is located in this District. A substantial part of the events giving rise to the claim occurred in this District. Mr. Caceres's immigration proceedings—including any future bond hearing—take place at the Varick Street Immigration Court, located in the District, and ICE's adjudication of his release requests takes

place at the New York Field Office, also located in the District. Therefore, venue is proper in the Southern District of New York.[6]

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to transfer or dismiss for improper venue. Mr. Caceres does not bring "core" habeas claims, and venue is proper in this District.

| | | |
|---|---|---|
| Dated: | April 25, 2025<br>New York, NY | Respectfully submitted,<br><br>*/s/ Kevin Siegel*<br>Kevin Siegel, Esq.<br>Brooklyn Defender Services<br>177 Livingston Street, Floor 7<br>Brooklyn, NY 11201<br>Tel: 718-254-0700<br>Email: ksiegel@bds.org<br><br>*Counsel for Plaintiff* |

---

[6] If the Court determines that venue is improper in this District for Mr. Caceres's due process claim, Mr. Caceres respectfully requests that the Court sever his claims, transfer his due process claim as a separate action to the Western District of Louisiana, and retain jurisdiction over his APA claim as a separate action. *See, e.g.*, *Wyndham Associates v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968), *cert. denied*, 393 U.S. 977 (1968) ("Where certain claims are properly severed, the result is that there are then two or more separate 'actions,' and the district court may, pursuant to [28 U.S.C] § 1404(a), transfer certain of such separate actions while retaining jurisdiction of others."); *Slade v. City of New* York, No. 24-cv-0514 (LTS), 2024 WL 4149872, at *4-5 (S.D.N.Y. Sept. 5, 2024 ) (same).

In the alternative, Mr. Caceres respectfully requests that the Court transfer this action to the Western District of Louisiana pursuant to 28 U.S.C. § 1406(a).

## Certificate of Compliance

Pursuant to Local Civil Rule 7.1(c), counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. The memorandum contains 4,283 words.

Dated:      April 25, 2025      */s/ Kevin Siegel*
                New York, NY      Kevin Siegel, Esq.