UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MILTON CACERES MOLINA a/k/a MILTON
CANALES MOLINA,

                Plaintiff,

      -against-                                    25-cv-1844 (LAK)

WILLIAM JOYCE, et al.,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

        Appearances:

               Alyssa Briody
                Kevin Siegal
                BROOKLYN DEFENDER SERVICES
                *Attorneys for Plaintiff*

                Anthony Jan-Huan Sun
                Assistant United States Attorney
                JAY CLAYTON
                UNITED STATES ATTORNEY

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff Milton Caceres Molina ("Caceres") – a noncitizen who has been granted a deferral of removal due to a likelihood of facing torture in El Salvador – alleges that he has been detained by U.S. Immigration and Customs Enforcement ("ICE") for over 37 months without a bond

2

hearing before a neutral adjudicator.[1] Caceres brings claims under the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act ("APA").[2] He asks the Court to set aside ICE's decision to deny his request for discretionary release and to order the government to provide him a constitutionally adequate bond hearing at which the government bears the burden of showing by clear and convincing evidence future danger or risk of flight that cannot be mitigated by an alternative to detention or reasonable bond.[3] Defendants William Joyce, Todd Lyons, Kristi Noem, and Pamela Bondi (collectively, the "Government") argue that venue is improper in this District because Caceres' action is a "core" habeas challenge and thus must be brought in the district of his confinement.[4] The Government therefore moves to dismiss Caceres' action for improper venue or transfer it to the Western District of Louisiana where Caceres is detained.[5]

### *Background*[6]

Caceres is a 34-year-old Salvadoran national who has lived in the United States for

---

[1] Dkt 1 (Complaint) ¶¶ 33, 49, 65.

[2] *Id*. ¶¶ 66–85.

[3] *Id.* at 21–22.

[4] *See* Dkt 18 (Government's Motion to Dismiss or Transfer) at 1.

[5] *Id*.

[6] On a Rule 12(b)(3) motion to dismiss for improper venue, "[t]he court must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits." *U.S. E.P.A, ex rel. McKeown v. Port Auth. Of N. Y. and N.J.*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001), *aff'd sub nom, McKeown v. Del. Bridge Auth.*, 23 F. App'x 81 (2d Cir. 2001).

3

nearly half of his life and is the father of two U.S.-citizen daughters.[7] He presently is detained by ICE at the Central Louisiana ICE Processing Center ("CLIPC") in Jena, Louisiana, under the authority of ICE's New York Field Office.[8]

Caceres first entered the United States illegally in 2005 at the age of 14, allegedly to escape forcible recruitment by Salvadoran gangs.[9] After being convicted of misdemeanor firearm possession in 2009, he was transferred to ICE custody and ordered removed.[10] He was deported to El Salvador in 2010.[11]

After his return to El Salvador, Caceres alleges, he faced harassment and vicious attacks by rival gangs and police officers.[12] He returned to the United States illegally in 2013.[13] For the next nine years, Caceres lived and worked on Long Island, supporting his family and incurring only a 2019 traffic infraction resolved with a small fine.[14]

In September 2021, federal agents arrested Caceres for illegal re-entry under 8 U.S.C.

---

[7] Dkt 1 (Complaint) ¶¶ 2, 6, 33.

[8] *Id*. ¶ 6.

[9] *Id*. ¶ 33.

[10] *Id*. ¶ 34.

[11] *Id*.

[12] *Id*. ¶¶ 36-38.

[13] *Id*. ¶¶ 39, 40.

[14] *Id*. ¶¶ 41, 42.

4

§ 1326(a).[15] At that time, Caceres learned that El Salvador had issued arrest warrants and an Interpol Red Notice, which he claims falsely accuse him of gang-related murder.[16] He pled guilty to illegal re-entry, was sentenced to time served and, in February 2022, was transferred to ICE custody.[17] ICE placed Caceres in "withholding-only" proceedings because Caceres is "subject to a reinstated removal order but was found by an asylum officer to have a reasonable fear of persecution or torture in El Salvador."[18]

In July 2022, the Immigration Judge denied Caceres' applications for withholding of removal and protection under the Convention Against Torture ("CAT") and, in November 2022, the Board of Immigration Appeals ("BIA") dismissed his appeal.[19] He then filed a petition for review in the Second Circuit.[20] In February 2024, while his appeal was pending, the BIA reopened the case due to the expansion of El Salvador's March 2022 "State of Exception."[21] The Immigration Judge then granted deferral of removal under CAT on September 3, 2024, concluding that it was more likely than not that Caceres would be tortured in El Salvador.[22] The Department of Homeland Security appealed

---

[15] *Id.* ¶ 43.

[16] *Id*. ¶ 44.

[17] *Id*. ¶¶ 45, 46.

[18] *Id.* ¶ 46; Dkt 1-2 (BIA Remand) at 3 n.1.

[19] *Id.* ¶ 47.

[20] *Id.*

[21] *Id.* ¶ 48

[22] *Id.* ¶ 49.

the Immigration Judge's grant of relief, and the appeal remains pending.[23]

Caceres alleges that he has been "detained in jail-like conditions throughout the duration of his immigration proceedings" and that CLIPC has denied him necessary medical treatment.[24] He alleges also that ICE has failed to comply with its obligation to regularly review his custody[25] and that ICE disregarded its long-standing policy that presumes release for non-citizens granted CAT protection absent exceptional public safety concerns.[26] Caceres alleges that he has been detained for over thirty-seven months without receiving a bond hearing before a neutral adjudicator.[27] The Government contends that Caceres has "received six periodic post-order custody reviews and at least one custody review pursuant to ICE Directive 16004.1."[28]

Caceres claims that the failure to afford him a bond hearing at which the government must prove by clear and convincing evidence that his detention is necessary to prevent danger to the public or risk of flight violates the Due Process Clause of the Fifth Amendment of the United States Constitution.[29] He further claims that ICE violated the APA by ignoring mandatory post-order custody

---

[23] *Id.* ¶ 50.

[24] *Id.* ¶¶ 51, 55.

[25] *Id.* ¶ 57.

[26] *Id.* ¶¶ 27–32.

[27] *Id.* ¶¶ 1, 65.

[28] Dkt 19 (Morrow Declaration) ¶¶ 11, 14, 16, 18, 20, 21, 27.

[29] *Id.* ¶¶ 66–74.

6

review regulations and by disregarding its own policy favoring the release of CAT grantees.[30] He asks the Court to (1) compel a bond hearing at which the Government bears the burden of showing by clear and convincing evidence future danger or risk of flight that cannot be mitigated by an alternative to detention or reasonable bond, (2) set aside ICE's November 2024 release denial, (3) award fees and costs, and (4) grant any other appropriate relief.

The Government moves to dismiss or transfer Caceres' action to the United States District Court for the Western District of Louisiana.[31]

## *Discussion*

### I.   The District-of-Confinement Rule

In *Rumsfeld v. Padilla*, the Supreme Court established a "general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."[32] Although *Padilla* reserved the question of whether this principle applies to petitions filed by aliens pending deportation,[33] a clear majority of judges in this district have applied *Padilla*'s district-of-confinement rule to challenges to immigration-based detention.[34] The

---

[30] *Id.* ¶¶ 75–85.

[31] *See* Dkt 18.

[32] 542 U.S. 426, 443 (2004).

[33] *See Padilla*, 542 U.S. at 435 n.8.

[34] *See Khalil v. Joyce*, No. 25-cv-1935 (JMF), 2025 WL 849803, at *7 (S.D.N.Y. Mar. 19, 2025) (noting that a substantial majority of judges in this District apply the immediate-custodian rule to immigration habeas petitions); *see also Almazo v. Decker*, No. 19-cv-9941 (PAE), 2018 WL 5919523, at *1 (S.D.N.Y. Nov. 13, 2018) (collecting cases); *see also Fortune v. Lynch*, No. 15-cv-8134 (KPF), 2016 WL 1162332, at *2 (S.D.N.Y. Mar. 22,

7

Supreme Court's recent decision in *Trump v. JGG* confirmed *Padilla*'s application in the immigration context.³⁵  Accordingly, the dispositive question here is whether Caceres' claims for relief fall within the "core" of the writ of habeas corpus.  If they do, his action must be brought in the Western District of Louisiana, the district where he is detained.

Most decisions in this district have concluded that challenges to physical detention in the immigration context fall within the "core" of habeas, whereas challenges to custody other than detention, such as orders of removal, do not.³⁶  Applying this principle, numerous cases in this district have determined that a request for a bond hearing is a "core" challenge to detention because it concerns the detainee's present physical confinement.³⁷   These decisions, however, were made without the benefit of the Supreme Court's recent guidance in *Trump v. JGG*.³⁸

---

2016) (collecting cases).

³⁵ *See Trump v. J. G. G.*, 145 S. Ct. 1003, 1005 (2025) (applying the district-of-confinement rule in the immigration context).

³⁶ *See S.N.C. v. Sessions*, 325 F. Supp. 3d 401, 406-07 (S.D.N.Y. 2018).

³⁷ *See, e.g., Singh v. Decker*, No. 20-cv-9089 (JPC), 2021 WL 23328, at *3 (S.D.N.Y. Jan. 4, 2021) ("[Petitioner's] request for a bond hearing before the IJ similarly is a 'core' challenge, as it directly concerns his physical detention and may ultimately result in his release from such detention."); *Darboe v. Ahrendt*, 442 F. Supp. 3d 592, 594-95 (S.D.N.Y. 2020) ("[Petitioner's] challenge regarding the sufficiency of the bond hearing does not transform his petition into a noncore challenge because the relief sought would still be a bond hearing, at which [Petitioner] can challenge his continued detention."); *Golding v. Sessions,* No. 18-cv-3036 (RJS), 2018 WL 6444400, at *2 (S.D.N.Y. Dec. 6, 2018) ("[T]he Court concludes that Petitioner's request for a bond hearing is essentially a challenge to his current immigration detention and therefore falls within the ambit of 'core' proceedings."); *Heller v. Barr*, No. 19-cv-4003 (ER), 2019 WL 2223183, at *2 (S.D.N.Y. May 22, 2019) ("Petitioners' argument that they are challenging the legal process of the bond hearing, as opposed to the confinement that resulted from the legal insufficiency of the bond hearing, relies upon a false distinction. Petitioners seeks as relief a bond hearing at which Petitioner[s] can challenge [their] current detention.").

³⁸ 145 S. Ct. 1003 (2025).

8

Both Caceres and the Government agree that, following *JGG*, the standard established in *Preiser v. Rodriguez*[39] and its progeny is critical to this Court's determination of whether Caceres' claims for relief fall within the "core" of habeas such that the district-of-confinement rule applies.[40] The *Preiser* line of cases – which addressed the relationship between Section 1983 claims and the federal habeas statutes – defined "core" habeas challenges as those where "success would necessarily demonstrate the invalidity of confinement or its duration."[41] Prior to *JGG*, cases in this district ordinarily have not applied the *Preiser* standard to determine whether a claim is a "core" habeas challenge.

The plaintiffs in *JGG* – five Venezuelan noncitizens and a putative class, members of which were detained by the Department of Homeland Security – "sought injunctive and declaratory relief against the implementation of, and their removal under, [the President's Proclamation No. 10903 invoking the Alien Enemies Act]."[42] They brought claims for relief under various federal laws, including, like Caceres, the APA and the Due Process Clause.[43] And like Caceres, they did not request release from detention.[44]

In *JGG*, the Supreme Court made clear that an action may fall within the "core" of

---

[39] 411 U.S. 475 (1973).

[40] *See* Dkt 20 (Government's Motion to Dismiss or Transfer) at 5; Dkt 22 (Government's Reply) at 3, 5-6; Dkt 11 (Plaintiff's Response).

[41] *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

[42] *See* 145 S. Ct. at 1005.

[43] *See* Compl., Dkt 1, *JGG v. Trump*, No. 25-cv-00766 (D.D.C. Mar. 15, 2025).

[44] *See id.*

9

the writ of habeas corpus even if the plaintiff does not make a formal request for release.[45]  Invoking the *Preiser* standard, the Court explained that the *JGG* plaintiffs' claims for relief "necessarily impl[ied] the invalidity of their confinement and removal under the [Alien Enemies Act]" and therefore fell within the "core" of habeas corpus, regardless of whether they requested release.[46]  Accordingly, the only proper venue was the district of confinement.[47]

        Caceres argues that the *Preiser* standard requires a departure from the prior conclusions in cases in this district that a request for a bond hearing essentially is a challenge to present physical confinement and thus a "core" habeas challenge.  Specifically, he contends that the relief he seeks "does not necessarily – or even indirectly – imply the invalidity of his confinement" because "it merely requires [the Government] to comply with the Constitution and with agency law in exercising [its] own judgment as to whether [he] should remain detained."[48]  The Government argues that Caceres' claims necessarily imply the invalidity of his confinement because "if he is correct that the Constitution requires that he be given a bond hearing . . . then his detention absent such a hearing would be unconstitutional."[49]  Regardless of whether he requests release expressly, Caceres' action, the Government argues, challenges the validity of his present physical confinement

---

[45] *See* 145 S. Ct. at 1005.

[46] *See id.*

[47] *See id*.

[48] *See* Dkt 21 at 1.

[49] *See* Dkt 22 at 4.

and thus must be brought in the district of confinement.[50] A review of the *Preiser* line of cases is necessary to resolve this question.

In *Preiser*, state prisoners challenged the constitutionality of disciplinary proceedings which had resulted in the loss of good-time credits and "sought injunctive relief to compel restoration of the credits, which in each case would result in their immediate release from confinement in prison."[51] The Supreme Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."[52] "Because an action for restoration of good-time credits in effect demands immediate release or a shorter period of detention, it attacks 'the very duration of . . . physical confinement,' and thus lies at 'the core of habeas corpus.'"[53]

The Supreme Court elaborated on this standard in subsequent cases. Claims targeting the wrong *procedure*, rather than the wrong *result*, generally do not fall within the "core" of habeas.[54] Where, however, establishing the basis for the claim necessarily would demonstrate the

---

[50] *See* Dkt 22 at 3.

[51] *See* 411 U.S. 475, 476–77 (1973).

[52] *Id.* at 500.

[53] *Wilkinson v. Dotson,* 544 U.S. 74, 79 (2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973)).

[54] *See Wolff v. McDonnell*, 418 U.S. 539, 554 (1974) (holding that inmates could not use § 1983 to obtain restoration of credits but that they could use § 1983 to obtain a declaration that the disciplinary procedures were invalid, as a predicate to a damages award, or an injunction enjoining the prospective enforcement of invalid prison regulations).

invalidity of the confinement, habeas corpus would be the only appropriate remedy.[55] Accordingly, a successful challenge to procedure, in some but not all instances, necessarily could imply the invalidity of confinement, thus making such an action fall within the "core" of habeas.

*Edwards v. Balisok*[56] illustrates the point. The plaintiff there, a prisoner, brought a Section 1983 claim for damages based on the alleged denial of a fair disciplinary hearing which resulted in a loss of good-time credits. "[T]he Court found that habeas was the sole vehicle for the inmate's constitutional challenge insofar as the prisoner sought declaratory relief and money damages, because the 'principal procedural defect complained of,' namely, deceit and bias on the part of the decisionmaker, 'would, if established, necessarily imply the invalidity of the deprivation of [his] good-time credits.'"[57] Significantly, however, the inmate's claim for prospective injunctive relief barring future unconstitutional procedures was held not to be within the "core" of habeas because its resolution in favor of the inmate would not necessarily imply the invalidity of the previous loss of good-time credits.[58]

This distinction was driven home in *Wilkinson v. Dotson*,[59] where the plaintiffs

---

[55] *See Heck v. Humphrey*, 512 U.S. 477, 481–82 (1994).

[56] 520 U.S. 641, 643–44 (1997).

[57] *See Wilkinson v. Dotson*, 544 U.S. 74, 80-81 (2005) (quoting *Balisok*, 520 U.S., at 646); *see Balisok*, 520 U.S. at 646–48 (noting that a "decision of a biased hearing officer who dishonestly suppress[ed] evidence of innocence" would necessarily be set aside).

[58] *See Balisok*, 520 U.S. at 648 ("Ordinarily, a prayer for such prospective relief will not necessarily imply the invalidity of a previous loss of good-time credits, and so may properly be brought under § 1983.").

[59] 544 U.S. 74 (2005).

12

challenged state parole procedures and sought new parole-eligibility and parole-suitability proceedings conducted under constitutionally proper procedures.[60]  Reviewing *Preiser* and its progeny, the Supreme Court there concluded that habeas is the only remedy when prisoners "seek to invalidate the duration of their confinement – either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody."[61]  This is true "no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) . . . if success in that action would necessarily demonstrate the invalidity of confinement or its duration."[62]  Considering these principles, however, the Court held that the *Wilkinson* plaintiffs' claims were not "core" habeas claims.  The Court explained:

> "[Plaintiffs] Dotson and Johnson seek relief that will render invalid the state procedures used to deny parole eligibility (Dotson) and parole suitability (Johnson). Neither respondent seeks an injunction ordering his immediate or speedier release into the community.. . . Success for Dotson does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed consideration of a new parole application. Success for Johnson means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term.  Because neither prisoner's claim would necessarily spell speedier release, neither lies at the core of habeas corpus.  Finally, the prisoners' claims for future relief (which, if successful, will not necessarily imply the invalidity of confinement or shorten its duration) are yet more distant from that core."[63]

Given the foregoing analysis, the Supreme Court subsequently held in *Skinner v.*

---

[60] *Id.* at 78.

[61] *Id.* at 81.

[62] *Id.* at 81–82.

[63] *Id*. at 82 (internal citations and quotation marks omitted).

*Switzer* that a prisoner could bring a Section 1983 action challenging a state's refusal to permit DNA testing of evidence because success would not necessarily imply the invalidity of his conviction.[64] While the results might be exculpatory, "that outcome [was] hardly inevitable."[65] It noted it has never "recognized habeas as the sole remedy, or even an available one, where the relief sought would neither terminate custody, accelerate the future date of release from custody, nor reduce the level of custody."[66]

Here, Caceres has not requested, even in the alternative, that this Court order his release or shorten the duration of his confinement. To be sure, as *JGG* made clear, the fact that Caceres does not make a formal request for release does not automatically place his action outside the "core" of habeas. But, as in *Wilkinson*, his success in this action would not necessarily compel earlier release. Caceres seeks only a hearing which may or may not result in his release from detention. A favorable judgment would require only that the Executive Office for Immigration Review – not the Court – determine if Caceres should remain detained. Release would not necessarily be "inevitable."[67]

Nor – and unlike the situation in *Balisok* – would a holding that Caceres is entitled to a bond hearing necessarily invalidate the basis of Cacares' detention under 8 U.S.C. § 1231. In *Balisok*, the Supreme Court explained that a finding of deceit and bias on the part of the hearing

---

[64] 562 U.S. 52, 534 (2011).

[65] *Id*.

[66] *Id.* (internal quotation marks omitted) (cleaned up).

[67] 562 U.S. 521, 534 (2011); *see also Nelson v. Campbell*, 541 U.S. 637, 647 (2004) (noting the Supreme Court was "careful in *Heck* to stress the importance of the term 'necessarily'").

officer would require the reinstatement of good-time credits because a decision tainted by procedural defects of that nature must be set aside.[68] Indeed, Justice Ginsburg, in her concurrence, specified that less egregious procedural defects would *not* necessarily imply the invalidity of the deprivation of the prisoner's good-time credits.[69] A determination that Caceres is entitled to a bond hearing pursuant to the Due Process Clause would not have the same effect as the finding required in *Balisok* because it would not necessarily reduce the duration of Caceres' detention or invalidate the underlying basis for it.

This outcome can be distinguished also from *JGG*, where success would have invalidated the application of the Alien Enemies Act to the plaintiffs and, accordingly, necessarily invalidated the plaintiffs' detention on that basis. The same is not true here because the plaintiff's success in this action would not require a holding that the basis of Caceres' detention is invalid.

One of the few courts to consider this question under the *Preiser* standard endorsed the reasoning advanced by Caceres and concluded that similar claims for relief were not "core" challenges.[70] In *Aracely, R. v. Neilsen*, plaintiffs challenged under the APA and the Constitution ICE's alleged policy of denying parole to asylum seekers and detaining them without access to a

---

[68] *See Edwards v. Balisok*, 520 U.S. 641, 646-47 (1997) (explaining "the due process requirements for a prison disciplinary hearing . . . are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence").

[69] *Id.* at 649 (Ginsburg, J.,concurring).

[70] 319 F. Supp. 3d 110, 126 (D.D.C. 2018). Applying the *Preiser* standard, the Ninth Circuit, in *Doe v. Garland*, concluded that the plaintiffs' habeas petition seeking release as an alternative to a bond hearing brought a "core" claim. 109 F.4th 1188, 1193-94 (9th Cir. 2024). However, the Ninth Circuit stressed that the plaintiff sought "typical habeas relief in asking for his release should Respondents fail to provide him with an individualized bond hearing." *Id*. at 1194. Here, Caceres does not request release in the alternative.

bond hearing.⁷¹  The court determined that the plaintiffs were not required to bring their claims in habeas because "[i]f Plaintiffs [were] successful" and the court "enjoin[ed] Defendants from adhering to any such policy and require[d] that Plaintiffs be given bond hearings, that ruling would not necessarily imply that their confinement [was] invalid or otherwise should be shorter, because their parole could still be denied for other legitimate reasons."⁷²

The same reasoning applies here.  Although some rulings in this district have concluded that a detainee's request for a bond hearing is a "core" challenge, none has considered the *Preiser* standard in reaching its conclusion.⁷³  The Government agrees that the correct standard to apply is that established in *Preiser* and its progeny.  And, under the *Preiser* standard, Caceres' action is not a "core" habeas challenge because a victory for Caceres would not necessarily imply the invalidity of his detention or its duration.  Therefore, the district-of-confinement rule does not apply.**⁷⁴**

II.   *Venue under 28 U.S.C. § 1391(e)(1)*

On a motion to dismiss pursuant to Rule 12(b)(3), the plaintiff bears the burden of

---

⁷¹   319 F. Supp. 3d 110, 126 (D.D.C. 2018).

⁷²   *Id*.

⁷³   A court applying the ordinary analysis in this District – without considering the standard in *Preiser* – may have concluded that the *JGG* plaintiffs' claims for relief were not within the "core" of habeas because the plaintiffs challenged their *removal* under the AEA, rather than their detention. Challenges to orders of removal are typically considered "noncore" in this District. *See SNC. v. Sessions*, 325 F. Supp. 3d 401, 406-07 (S.D.N.Y. 2018).

⁷⁴   Likewise, the immediate-custodian rule does not apply.  Accordingly, Caceres is not required to name the warden of the Central Louisiana ICE Processing Center as a defendant.

16

showing that venue is proper.[75]  "To meet this burden, the plaintiff must plead facts sufficient for a prima facie showing of venue."[76]

Because the defendants are officers or employees of the United States sued in their official capacity, 28 U.S.C. § 1391(e)(1) governs.  Under this Section, venue is proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action."[77]

"[V]enue with respect to a federal officer or employee is proper in the place of his or her official residence, where his or her official duties are performed."[78]  Defendant Joyce's residence is in this District because his official duties are performed at ICE's New York Field Office, located in this District.[79]  Moreover, a substantial part of the events giving rise to the claim occurred in this District.[80]  For example, "[t]he New York Field Office, located within the District, is solely responsible for decisions regarding Plaintiff's custody, including the initial decision to take him into detention and the subsequent decision to continue detaining him."[81]  Therefore, Caceres has

---

[75] *See Dixon v. Reid*, 744 F. Supp. 3d 323, 330 (S.D.N.Y. 2024).

[76] *Id*.

[77] 28 U.S.C. § 1391(e)(1).

[78] *Caremark Therapeutic Servs. v. Leavitt*, 405 F. Supp. 2d 454, 464 (S.D.N.Y. 2005).

[79] Dkt 1 ¶ 13.

[80] *Id*.

[81] *Id.*

made a prima facie showing that venue in this District is proper under Section 1391(e)(1).

[balance of page deliberately left blank]

18

## *Conclusion*

For the foregoing reasons, the Government's motion to dismiss or transfer plaintiff's action (Dkt 18) on the basis of allegedly improper venue is denied.

SO ORDERED.

Dated:     August 2, 2025

_____
Lewis A. Kaplan
United States District Judge