UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MILTON CACERES MOLINA a/k/a MILTON
CANALES MOLINA,

                            Plaintiff,

              -against-                                          25-cv-1844 (LAK)


WILLIAM JOYCE, et al.,

                            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/13/2025
```

## MEMORANDUM OPINION

            Appearances:

                            Alyssa Briody
                            Kevin Siegal
                            BROOKLYN DEFENDER SERVICES
                            *Attorneys for Plaintiff*

                            Anthony Jan-Huan Sun
                            Assistant United States Attorney
                            JAY CLAYTON
                            UNITED STATES ATTORNEY

LEWIS A. KAPLAN, *District Judge.*

            Plaintiff Milton Caceres Molina ("Caceres") — a noncitizen who has been granted

a deferral of removal due to a likelihood of facing torture in El Salvador — alleges that he has been

detained by U.S. Immigration and Customs Enforcement ("ICE") for over 45 months without a bond

hearing before a neutral adjudicator.[1]  Caceres now brings claims against defendants William Joyce,

---

[1]        Dkt 1 ("Compl.") ¶¶ 33, 49, 65.

2

Todd Lyons, Kristi Noem, and Pamela Bondi (collectively, the "Government") under the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act ("APA").[2]  Caceres asks the Court to set aside ICE's decision to deny his request for discretionary release and to order the Government to provide him a constitutionally adequate bond hearing.[3]  The Government moves to dismiss the action.[4]

*Facts*[5]

I.    *Background*

Caceres is a 34-year-old Salvadoran national who has lived in the United States for nearly half of his life and is the father of two U.S.-citizen daughters.[6]  In 2005, at 14 years old, Caceres first entered the United States to escape forcible recruitment by Salvadoran gangs.[7]  After being convicted of misdemeanor firearm possession in 2009, Caceres was transferred to ICE custody

---

[2]
    *Id.* ¶¶ 66–85.

[3]
    *Id.* at 21–22.

[4]
    Dkt 27.

[5]
    At this stage, the Court assumes the truth of the well-pleaded factual allegations of the Complaint and draws all reasonable inferences in the plaintiff's favor.  See *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809–10 (2d Cir. 2019).

[6]
    Compl. ¶¶ 2, 6, 33.

[7]
    *Id.* ¶ 33.

3

and ordered removed.[8]  He was deported to El Salvador in 2010.[9]

Caceres alleges, after his return to El Salvador, that he faced harassment and vicious attacks by rival gangs and police officers.[10]  He returned to the United States illegally in 2013.[11]  For the next nine years, Caceres lived and worked on Long Island, supporting his family.[12]  His sole interaction with the criminal justice system during this period was a 2019 traffic infraction resolved with a small fine.[13]

In September 2021, federal agents arrested Caceres for illegal re-entry under 8 U.S.C. § 1326(a).[14]  At that time, Caceres learned that El Salvador had issued arrest warrants and an Interpol Red Notice for him, which he claims falsely accuse him of gang-related murder.[15]  He pled guilty to illegal re-entry, was re-sentenced to time served, and in February 2022 was transferred to ICE custody.[16]  ICE placed Caceres in "withholding-only" proceedings because Caceres is "subject to a reinstated removal order but was found by an asylum officer to have a reasonable fear of

---

[8]

     *Id.* ¶ 34.

[9]

     *Id.*

[10]

     *Id.* ¶¶ 36–38.

[11]

     *Id.* ¶ 40.

[12]

     *Id.* ¶ 41.

[13]

     *Id.* ¶ 42.

[14]

     *Id.* ¶ 43.

[15]

     *Id.* ¶ 44.

[16]

     *Id.* ¶¶ 45–46.

4

persecution or torture in El Salvador."[17]

In July 2022, the Immigration Judge denied Caceres' applications for withholding of removal and protection under the Convention Against Torture ("CAT").  In November 2022, the Board of Immigration Appeals ("BIA") dismissed his appeal.[18]  He then filed a petition for review before the Court of Appeals for the Second Circuit.[19]  In February 2024, while his appeal was pending, the BIA reopened the case due to the expansion of El Salvador's March 2022 "State of Exception" pertaining to suspected gang members.[20]  The Immigration Judge then granted deferral of removal under CAT on September 3, 2024, concluding that it was more likely than not that Caceres would be tortured in El Salvador.[21]  On September 29, 2025, the BIA remanded the case to the Immigration Judge for further fact finding and legal analysis in light of intervening BIA decisions.[22]

Caceres was detained at the Central Louisiana ICE Processing Center in Jena, Louisiana, when he filed this action.[23]  His complaint states that Caceres "is detained under the authority of ICE's New York Field Office, which is in charge of his detention and decisions related

---

[17]     *Id.*  ¶ 46; Dkt 1-2 at 3 n.1.

[18]     *Id.* ¶ 47.

[19]     *Id.*

[20]     *Id.* ¶ 48

[21]     *Id.* ¶ 49.

[22]     Dkt 34-1.

[23]     Compl. ¶ 6.

5

to his release."[24]

## II.    Procedural Posture

On March 5, 2025, Caceres brought this action.  The Government thereafter moved to dismiss the case for lack of personal jurisdiction and improper venue or, in the alternative, to transfer it to the Western District of Louisiana, the district of Caceres's detention.[25]  The Court denied the motion, holding that (1) the district-of-confinement rule did not apply because Caceres's request for a bond hearing was not a core habeas challenge, and (2) Caceres had made a *prima facie* showing that venue in this district was proper.[26]  The Government again moves to dismiss the complaint, this time under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.[27]

## Discussion

## I.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[28]

---

[24]      *Id.*

[25]      Dkt 18.

[26]      Dkt 24.

[27]      Dkt 27.

[28]      *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[29]  In deciding a Rule 12(b)(6) motion, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.[30]

## II.    *Materials Considered*

As an initial matter, the Court addresses what materials properly may be considered at this stage.  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.  Where a document is not incorporated by reference, the court may neverless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[31]

Under Rule 12(d), presentation on a motion to dismiss of materials outside the four corners of and not incorporated in the complaint — unless they are excluded by the court for purposes of the motion — requires that the motion be converted into one for summary judgment. Among other things, that (a) restricts the court to consideration only of evidence that would be

---

[29]    *Id.* at 678.

[30]    *See Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001).

[31]    *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

admissible at trial,[32] and (b) requires that "[a]ll parties . . . be given a reasonable opportunity to present all the material that is pertinent to the motion,"[33] which often involves pretrial discovery.

Here, the Government attaches to its motion a declaration by an ICE deportation officer, William Morrow.  The Morrow declaration purports to provide a detailed history of Caceres's detention, related proceedings, and self-described "errors with [ICE's] electronic post order custody review system."[34]  The Government attaches also copies of (1) an ICE memorandum concerning its post-order custody review policy,[35]  and (2) a December 2024 "custody review decision" issued by ICE ordering Caceres's continued detention.[36]  The Government does not argue that these documents are incorporated by reference in or integral to the complaint.  Nor does it argue that the Court may take judicial notice of the documents or the facts referenced therein.

Accordingly, the Court excludes the Morrow declaration and the attached documents in deciding this motion.

---

[32]
    *See Presbyterian Church Of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009).

[33]
    Fed. R. Civ. P. 12(d).

[34]
    Dkt 28.

[35]
    Dkt 28-1.

[36]
    Dkt 28-2.

8

III.     *Due Process Clause Claim*

A.     *Legal Framework*

In *Johnson v. Arteaga-Martinez*,[37] the Supreme Court set forth the legal framework

applicable to Caceres' detention:

> "The [Immigration and Nationality Act ('INA')] establishes procedures for the
> Government to use when removing certain noncitizens from the United States and,
> in some cases, detaining them.  The section at issue here, 8 U.S.C. § 1231(a),
> governs the detention, release, and removal of individuals 'ordered removed.'  [The
> Supreme] Court has held that § 1231(a) applies to individuals with pending
> withholding-only proceedings.
>
> After the entry of a final order of removal against a noncitizen, the Government
> generally must secure the noncitizen's removal during a 90-day 'removal period.'
> The statute provides that the Government 'shall' detain noncitizens during the
> statutory removal period. § 1231(a)(2).  After the removal period expires, the
> Government 'may' detain only four categories of people: (1) those who are
> 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain
> specified grounds; (3) those it determines 'to be a risk to the community'; and (4)
> those it determines to be 'unlikely to comply with the order of removal.'  Individuals
> released after the removal period remain subject to terms of supervision.
>
> Section 1231(a)(6) does not expressly specify how long detention past the 90-day
> removal period may continue for those who fall within the four designated statutory
> categories.  In *Zadvydas v. Davis*, . . . the Court applied the canon of constitutional
> avoidance and determined that 'read in light of the Constitution's demands,' §
> 1231(a)(6) 'does not permit indefinite detention' but instead 'limits an alien's
> post-removal-period detention to a period reasonably necessary to bring about that
> alien's removal from the United States.'"[38]

In *Arteaga-Martinez*, the Supreme Court held that Section 1231(a)(6) does not

"require[] bond hearings before immigration judges after six months of detention in which the

Government bears the burden of proving by clear and convincing evidence that a noncitizen poses

---

[37]

596 U.S. 573 (2022).

[38]

*Id.* at 578–79 (citations omitted) (quoting 8 U.S.C. § 1231 and *Zadvydas v. Davis*, 533 U.S.
678, 689 (2001)).

a flight risk or a danger to the community."[39]  The Court did not decide whether the Due Process Clause of the Fifth Amendment requires a bond hearing after prolonged detention.[40]

Here, Caceres sues under the Due Process Clause and the APA.  He does not argue, pursuant to *Zadvydas*, that his continued detention without a bond hearing violates Section 1231(a)(6).  Caceres argues that his claim therefore does not depend on whether his detention is "reasonably necessary to bring about [his] removal from the United States."[41]  He instead contends that as-applied constitutional challenges to prolonged immigration detention under Section 1231(a)(6) should be evaluated under the framework of *Mathews v. Eldridge*.[42]

In reply, the Government counters that as-applied challenges to prolonged detention are available only in "exceptional" cases.  The Government relies on the Fourth Circuit's decision in *Castaneda v. Perry*,[43] in which the court assumed without deciding "that as-applied due process challenges to § 1231 detentions may proceed outside the *Zadvydas* framework when the alien presents, as a threshold matter, exceptional circumstances warranting that departure."[44]  Under *Castaneda*, a litigant bringing an as-applied challenge to his Section 1231 detention first must show exceptional circumstances in order to warrant consideration of the propriety of relief under

---

[39]    *Id.* at 580–81.

[40]    *Id.* at 583.

[41]    *Zadvydas*, 533 U.S. at 689.

[42]    424 U.S. 319 (1976).

[43]    95 F.4th 750 (4th Cir. 2024).

[44]    *Id.* at 761.

*Mathews*.[45]

The Government made this argument for the first time in reply.  Courts "generally do not consider issues raised in a reply brief for the first time because 'if an appellant raises a new argument in a reply brief an appellee may not have an adequate opportunity to respond to it.'"[46] Here, Caceres has not had an opportunity to (1) respond to the argument that he must establish extraordinary circumstances, or (2) argue that he has alleged adequately that such circumstances exist here.  Accordingly, for the purposes of this motion, the Government has waived the argument that Caceres must allege extraordinary circumstances to bring an as-applied challenge to his detention.  The Court therefore proceeds to the question whether Caceres has alleged a legally sufficient Due Process Clause claim under the *Mathews* framework.

B.    Mathews *Factors*

Under *Mathews*, courts evaluate three factors to determine whether an official action poses due process concerns, making additional procedural protections necessary.[47]   The three *Mathews* factors are (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or

---

45

        *See id.* at 762 n.13 (noting that court will "undertake a weighing of the *Mathews* factors" only after detainee has demonstrated exceptional circumstances).

46

        *In re Harris*, 464 F.3d 263, 268 n.3 (2d Cir. 2006) (citation omitted) (quoting *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001)).

47

        *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020).

substitute procedural requirement would entail."[48]  "The ultimate balance involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action."[49]

### 1.    *Private Interest Affected*

First, "the private interest affected by the official action is the most significant liberty interest there is — the interest in being free from imprisonment."[50]  "The longer the duration of incarceration, the greater the deprivation."[51]  In the context of an as-applied challenge to detention under Section 1231, another court in this district has held that this factor weighed in favor of a detainee who had "been detained approximately sixteen months, a period significantly longer than the presumptively reasonable period of six months contemplated in *Zadvydas* and radically longer than the 'standard' 90-day removal period laid out in § 1231."[52]

Here, Caceres's detention — 45 months and counting — is over *fifteen times* the standard 90-day removal period.  And given the posture of his case in immigration court, his detention is likely to continue for months, if not years, absent intervention.  Furthermore, Caceres alleges harsh conditions confinement — he allegedly has been subject to excessive force, placed in

---

[48]    *Mathews*, 424 U.S. at 335.

[49]    *Id.* at 348.

[50]    *Velasco Lopez*, 978 F.3d at 851.

[51]    *Id.* at 852.

[52]    *Cabrera Galdamez v. Mayorkas*, No. 22 CIV. 9847 (LGS), 2023 WL 1777310, at *5 (S.D.N.Y. Feb. 6, 2023).

solitary confinement, and denied necessary medical treatment.[53]  Caceres sufficiently has alleged

that the private interest affected by his prolonged detention is strong.


>    2.    *Risk of Erroneous Deprivation*

Second, based on the well-pleaded allegations of the complaint, the Court is obliged

to infer that "the procedures underpinning [Caceres]'s lengthy incarceration increase the risk of

error."[54]    Under the applicable regulations, the only reviews of his continued detention occur

"through non-appealable, internal reviews performed by ICE itself. . . . [T]hese proceedings suffer

from three significant shortcomings. First, the regulations place the burden on Petitioner rather than

the Government.  Second, the decision is by ICE itself, not an outside arbiter such as an immigration

judge.  Finally, the regulations do not provide for an in-person hearing, where Petitioner can present

his argument, call witnesses and confront the Government's evidence."[55]

Moreover, Caceres alleges that he has not been provided with the custodial reviews

required by the regulations.  Indeed, the Government admits that it has not conducted the required

reviews due to purported "errors with [ICE's] electronic post order custody review system."[56]  Even

if the applicable regulations provided sufficient protection from erroneous deprivation — a matter

of serious doubt in light of the deficiencies identified above — ICE's admitted failure to follow its

---

[53]

    Compl. ¶¶ 55–56.

[54]

    *Cabrera Galdamez*, 2023 WL 1777310, at *6.

[55]

    *Id.* (citations omitted).

[56]

    Dkt 28 at 4.  As noted above, the declaration in which this admission is contained is not properly before the Court.  The Court notes the Government's admission, however, because it eliminates any doubt as to the plausibility of Caceres's allegations.

own regulations would demonstrate a substantial risk of erroneous deprivation.

"'[A]s the period of . . . confinement grows,' so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention."[57] Caceres has been detained for over 45 months, and there is no end in sight. The need for procedural protections is self-evident. Caceres alleges that the procedures governing reviews of his detention increase the risk error and, in any event, ICE has not followed those procedures. He therefore has alleged sufficiently a risk of erroneous deprivation.

> 3.    *Government's Interest*

Third, Caceres contends that the government's interest is low. In the context of a habeas petition, another court in this district has noted that "[p]roviding a bond hearing for Petitioner does not undermine the Government's interests. It simply obligates the Government to justify his continued detention."[58] The Government has not identified in its moving papers any interest in denying Caceres a bond hearing. It therefore has waived any argument regarding this factor for the purposes of this motion.[59]

In reply, the Government argues that it has "a valid interest in detaining individuals who are subject to final orders of removal to ensure that aliens do not abscond and do not commit

---

[57]    *Velasco Lopez*, 978 F.3d at 853 (second alteration in original) (quoting *Zadvydas*, 533 U.S. at 701).

[58]    *Cabrera Galdamez*, 2023 WL 1777310, at *7.

[59]    *In re Harris*, 464 F.3d at 268 n.3.

crimes."[60]  Even if this argument were preserved, which it was not by virtue of its first mention having come in reply, it would not justify dismissal of the complaint.  Whether and to what extent a bond hearing before a neutral adjudicator — which would determine whether Caceres's detention is necessary to prevent danger to the public or risk of flight — would compromise the Government's interest requires analysis of materials beyond the four corners of the complaint.  For the purposes of this motion, Caceres sufficiently has alleged that the Government's interest in his prolonged detention without a bond hearing before a neutral adjudicator is insufficient to overcome his private interest and the alleged risk of erroneous deprivation.

* * *

In sum, Caceres adequately has alleged that the private interest affected by his detention without a bond hearing is significant, the risk of erroneous deprivation is high, and the government's interest is low.  The Government has waived the argument, for the purposes of this motion, that Caceres need allege any additional facts to state an as-applied challenge to his detention without a bond hearing before a neutral adjudicator.  Accordingly, Caceres adequately has a alleged a claim under the Due Process Clause.  Whether he will be able to prevail on that claim remains to be seen.

IV.    *APA Claim*

Caceres brings an APA claim under the doctrine set forth in *Accardi v. Shaughnessy*[61]

---

[60]    Dkt 33 at 6.

[61]    347 U.S. 260 (1954).

and its progeny.  "[T]he *Accardi* doctrine . . . provides plaintiffs with a means by which they can hold agencies accountable to their own policies.  It is clear, moreover, that such claims may arise under the APA."[62]  The doctrine's "ambit is not limited to rules attaining the status of formal regulations.  As the Supreme Court noted '[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required,' and even though the procedural requirement has not yet been published in the federal register."[63]

Caceres argues that ICE's failure to conduct internal reviews of Caceres's continued detention as required by regulation is arbitrary and capricious under the *Accardi* doctrine.[64]  The Government counters that the reviews ICE has conducted were reasonable and the resulting custody determinations should be upheld.  But the Government does not dispute that it failed to conduct all reviews required by its own regulations.[65]  Nor would a factual dispute on that issue constitute a ground for dismissal at this stage of the litigation.  Accordingly, Caceres has stated sufficiently an APA claim under the *Accardi* doctrine arising from ICE's alleged failure to conduct custody reviews required by regulation.

Caceres argues also that, in refusing to release him, ICE deviated from its policy favoring the release of noncitizens following a grant of a fear-based relief, absent exceptional

---

[62]    *Damus v. Nielsen*, 313 F. Supp. 3d 317, 337 (D.D.C. 2018) (citations omitted).

[63]    *Montilla v. I.N.S.*, 926 F.2d 162, 167 (2d Cir. 1991) (alteration in original) (quoting *Morton v. Ruiz*, 415 U.S. 199, 235 (1974)).

[64]    *See* 8 C.F.R. § 241.4(k)(2)(iii).

[65]    Dkt 28 at 4–5.

circumstances.  The Government does not dispute that violation of this policy would give rise to an *Accardi* claim.[66]  Rather, it argues that ICE followed the applicable policy in refusing to release Caceres.  Citing the Morrow declaration — which, as noted above, the Court has excluded in deciding this motion — the Government contends that "exceptional circumstances exist warranting maintaining detention" in Caceres's case.[67]

Whether ICE followed the applicable policy is a factual question inappropriate for resolution at this stage.  Caceres alleges that ICE did not follow the policy,[68] and the Government does not dispute that such a failure supports an *Accardi* claim.  Accordingly, Caceres sufficiently has stated an APA claim under the *Accardi* doctrine arising from ICE's alleged failure to follow its policy favoring the release of noncitizens following a grant of fear-based relief.

---

[66]
    In a footnote, the Government states that "agency action is not subject to judicial review under the APA where the action 'is committed to agency discretion by law.'" Dkt 29 at 13 n.4 (quoting 5 U.S.C. § 701(a)(2)).  The Government does not justify why this doctrine should apply here or otherwise elaborate on this argument.  Accordingly, for the purposes of this motion, the Government "has waived this argument by failing to develop it." *Chevron Corp. v. Donziger*, No. 11-cv-691 (LAK), 2013 WL 4045326, at *1 n.3 (S.D.N.Y. Aug. 9, 2013).

[67]
    Dkt 29 at 14–15.

[68]
    Compl. ¶¶ 80–84.

*Conclusion*

For the foregoing reasons, the Government's motion to dismiss (Dkt 27) is denied.


SO ORDERED.

Dated:          November 13, 2025

Lewis A. Kaplan
United States District Judge