UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MILTON CACERES MOLINA a/k/a MILTON CANALES MOLINA,

Plaintiff,

-against-

WILLIAM JOYCE, etc., et al.,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: __________
DATE FILED: 9/16/2026

25-cv-1844 (LAK)

**MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ENFORCE**

LEWIS A. KAPLAN, *District Judge*.

This action concerns plaintiff's prolonged detention in U.S. Immigration and Customs Enforcement ("ICE") custody while he purportedly awaits removal. The matter is before the Court on plaintiff's motion to enforce the Court's previous order and grant him immediate release, or, alternatively, require a new bond hearing.

## *Facts*

On July 1, 2026, this Court denied defendants' motion for summary judgment and granted plaintiff's cross-motion for summary judgment.[1] The Court need not recount here the facts of plaintiff's troubled immigration history and extended immigration detention.[2] It suffices to note

---

1 *Molina v. Joyce*, No. 25-cv-1844 (LAK), 2026 WL 1893736 (S.D.N.Y. July 1, 2026).

2 *See generally id.* at *1-6.

for purposes of resolving plaintiff's current motion that the Court ordered defendants, or the government, to provide plaintiff with a bond hearing before an immigration judge ("IJ") at which the government would "bear the burden of demonstrating by clear and convincing evidence that [plaintiff], upon release subject to appropriate terms of supervision as authorized by [8 U.S.C. §] 1231(a)(3), would pose a risk of flight or a danger to the community."[3] The government was ordered to release plaintiff if it did not provide him with such a hearing by July 17, 2026.[4]

On July 8, 2026, an IJ held a bond hearing.[5] Counsel for plaintiff and counsel for the U.S. Department of Homeland Security ("DHS") – representing the government – were present in court.[6] Plaintiff, as well as an interpreter, appeared virtually.[7] The IJ accepted into evidence this Court's memorandum opinion and a related order, letters from plaintiff's family members, expert reports from plaintiff, and the same evidence that the government previously had introduced in immigration court in plaintiff's removal proceedings.[8]

Although the IJ correctly noted that the government bore the burden in the hearing,[9] neither he nor DHS counsel initially appeared to be aware that this Court had required consideration

---

3. *Id.* at *13.

4. Mem. Endorsement (Dkt 59).

5. Pl.'s Mem. Law Supp. Mot. Enforce, Ex. 1 (Dkt 62-1) at 1.

6. *Id.* at 3.

7. *Id.*

8. *Id.* at 3:21-8:3.

9. *Id.* at 11:24-25.

of alternatives to detention.[10] Plaintiff's counsel fortunately corrected the record by directing the IJ and DHS counsel to the portion of this Court's memorandum opinion in which it had ordered such consideration.[11] DHS counsel then proceeded to argue (almost exclusively) that plaintiff would be a danger to the community if he were released.[12] DHS counsel stated that, though the IJ need not reach the question of flight risk *at all*, the IJ nonetheless could deem plaintiff a flight risk based on his (i) current detention of almost four-and-a-half years in ICE custody, (ii) final order of removal, (iii) criminal history, (iv) arrest warrant in El Salvador, (v) record of illegal reentry, and (vi) failure to apply for relief from removal after his reentry until being prosecuted for that reentry.[13] DHS counsel concluded by stating that "no amount of money or alternatives to detention" could "ensure [plaintiff's] return to court or for his potential removal from the United States."[14]

Plaintiff's counsel responded that the IJ lacked sufficient evidence to conclude that plaintiff would pose a danger to the community if he were released.[15] On flight risk, plaintiff's counsel said that plaintiff's family includes several U.S. citizens and lawful permanent residents who have lived at the same address for the last three decades and who would house plaintiff, sponsor

---

[10] *See id.* at 4:1-11.

[11] *See id.*

[12] *Id.* at 12:1-13:21.

[13] *Id.* at 13:21-14:23.

[14] *Id.* at 14:23-15:1.

[15] *Id.* at 15:3-20:23.

his bond, and help him attend any immigration appointments or proceedings he might have.[16] He stated moreover that plaintiff would be "willing to submit to any and all . . . alternative conditions to confinement that the [IJ] would like to impose."[17]

The IJ nonetheless quickly concluded that the government had "demonstrated by clear and convincing evidence the extremely high flight risk" posed by plaintiff and that "no alternatives [to detention] . . . would mitigate that flight risk."[18] The IJ purportedly based that decision on plaintiff's "very strong" fear of being detained, tortured, and killed should he be removed to El Salvador and on the IJ's inability to "see any alternatives to [detention] that would mitigate that" fear.[19] He stated plainly that he did not "think that report[ing] requirements would work" nor would "a GPS tracking device."[20] He therefore believed it was "*more than likely*" that plaintiff would fail to "show up for another hearing or for removal from the United States" if plaintiff were released.[21] The IJ expressly declined "to address dangerousness, because [, in his

---

16 *Id.* at 21:4-22:25.

17 *Id.* at 22:1-3.

18 *Id.* at 25:20-25; *accord id.* at 28:1-7.

19 *Id.* at 24:7-25:25.

20 *Id.* at 25:12-14.

21 *Id.* at 25:14-17 (emphasis added).

view,] the flight risk is just so high."[22] He accordingly denied plaintiff bond.[23] He provided no additional reasoning in his written order following the bond hearing.[24]

Plaintiff declined to appeal the IJ's decision to the BIA.[25] He instead moves here for an order of immediate release or, alternatively, requiring a new bond hearing on the ground that the government previously failed to provide a burden-shifted bond hearing subject to the clear and convincing evidence standard as this Court previously directed.

### ***Discussion***

The Court's task in adjudicating a motion to enforce is "narrow: it is to determine whether [the government] complied with this Court's order, not to review the hearing evidence de novo."[26] The Court in the immigration context must "afford a degree of deference to the factfinder's determinations" and not "overstep its bounds and set aside an [IJ]'s bond determination on

---

22 *Id.* at 26:19-21.

23 *Id.* at 25:20-25; *accord id.* at 28:1-7.

24 Rovner Decl., Ex. B (Dkt 66-5).

25 Defs.' Mem. Law Opp'n Mot. Enforce (Dkt 67) at 6.

26 *Mendoza v. Noem*, No. 26-cv-1260, 2026 WL 1470652, at *5 (S.D.N.Y. May 26, 2026) (quoting *G.F.F. v. Francis*, No. 25-cv-7368, 2026 WL 924072, at *3 (S.D.N.Y. Apr. 4, 2026), *appeal filed sub nom. G.F.F. v. Genalo*, No. 26-1831 (2d Cir. July 8, 2026)) (alteration in original); *accord R.R.M.C. v. Decker*, No. 22-cv-2952, 2022 WL 4639674, at *3 (S.D.N.Y. Sept. 30, 2022); *Medley v. Decker*, No. 18-cv-7361, 2020 WL 1033344, at *2 (S.D.N.Y. Mar. 3, 2020) (Nathan, J.).

discretionary or evidentiary grounds."[27] "[T]he question is 'whether the [IJ] relied upon proof that could not possibly establish by clear and convincing evidence' that [plaintiff] is a flight risk."[28]

Here, plaintiff is correct with respect to the merits of his argument. At a minimum, the IJ failed meaningfully to consider whether any alternatives to detention could ensure plaintiff's presence at future removal proceedings, let alone hold the government to its burden of proving by clear and convincing evidence that was the case.

The IJ simply concluded summarily that no alternatives to detention could mitigate plaintiff's risk of flight but never explained why. He stated without explanation that he did not think that either reporting requirements or GPS monitoring would work. That provides no basis on which the Court could conclude that the IJ complied with the Court's previous order or with due process.[29] And even if there were clear and convincing evidence on the record that those particular conditions of release would be ineffective, the record still would be devoid of any reason why the IJ would be

---

27 *Medley*, 2020 WL 1033344, at *2 (cleaned up); *see* 8 U.S.C. § 1226(e).

28 *Apollinaire v. Barr*, No. 19-cv-6285, 2019 WL 4023560, at *3 (W.D.N.Y. Aug. 27, 2019) (quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019)); *see Rivas Reyes v. Mullin*, No. 26-cv-4334, 2026 WL 2137762, at *1 (S.D.N.Y. July 24, 2026); *Mathieu v. DHS*, No. 26-cv-4630, 2026 WL 2123350, at *1 (S.D.N.Y. July 22, 2026); *Medley*, 2020 WL 1033344, at *2.

29 *C.R.C. v. Genalo*, No. 26-cv-2694, 2026 WL 2283016, at *7 (S.D.N.Y. Aug. 7, 2026) ("Courts in this Circuit routinely find that an IJ has failed to adequately consider alternatives to detention when the record reflects only the IJ's conclusory statements that he has considered them, without explaining which he considered and why they would be inadequate."); *G.F.F.*, 2026 WL 924072, at *3 ("Indeed, except for geolocation monitoring, which the IJ dismissed as ineffective in cursory fashion because it was not effective in all cases, the IJ failed to consider expressly any alternatives to detention. That was error."); *see Mendoza*, 2026 WL 1470652, at *7 ("The statement reflects the IJ's bare conclusion that there were no alternatives. It does not demonstrate that the IJ actually considered any."); *R.R.M.C.*, 2022 WL 4639674, at *5 (similar); *Fernandez Aguirre v. Barr*, No. 19-cv-7048, 2019 WL 4511933, at *5 (S.D.N.Y. Sept. 18, 2019) (similar).

limited to considering those two specified alternatives to detention. If the IJ did not know of other alternatives or did not know whether other alternatives were feasible, he "could have asked the attorney for DHS to confirm which conditions the department would be able to enforce" or he could have asked plaintiff's counsel "for more financial information from [plaintiff]'s family upon which to base a reasonable bond."[30] But he did none of this. "That omission is especially glaring given that" plaintiff offered to submit to any and all imposed conditions of supervised release, "even though it was not his burden to do so."[31]

That the government could not possibly have met its burden is apparent from its utter failure to argue the point beyond stating that "no amount of money or alternatives to detention" could ensure plaintiff's continued presence.[32] The government never "mention[ed] any possible alternatives of its own"[33] or explained why, for example, regular reporting to immigration authorities, a bond, GPS monitoring, home detention, or some combination of these conditions – all of which regularly are relied upon in the criminal and immigration contexts – would be insufficient in this case. With "virtually no individualized evidence of flight risk" from the government and "with no explanation from the IJ as to why he disregarded [plaintiff]'s substantial evidence to the

---

30 *Quituizaca v. Barr*, No. 20-cv-403, 2021 WL 6797494, at *7 (W.D.N.Y. Jan. 5, 2021); *see Sophia v. Decker*, No. 19-cv-9599, 2020 WL 1957373, at *2 (S.D.N.Y. Apr. 23, 2020) (describing IJ's discussion with DHS counsel regarding feasible conditions of release, including "ankle monitoring and check-ins").

31 *See Mendoza*, 2026 WL 1470652, at *6; *R.R.M.C.*, 2022 WL 4639674, at *5 (finding that the IJ failed to "meaningfully consider[] any of the alternatives [the plaintiff] offered" where the plaintiff was willing to "accept any conditions of release").

32 Pl.'s Mem. Law Supp. Mot. Enforce, Ex. 1 (Dkt 62-1) at 14:23-15:1.

33 *Mendoza*, 2026 WL 1470652, at *6; *see C.R.C.*, 2026 WL 2283016, at *7.

contrary, only one conclusion follows: the IJ did not place the burden on the [g]overnment at all, must less to the clear and convincing evidence standard."[34] This conclusion is reinforced by the IJ's and the government's apparent lack of awareness before the hearing of this Court's order that alternatives to detention be considered.

Additionally, "[i]t is unclear from the hearing transcript what standard the IJ applied, and the transcript indicates that the IJ may not have held the government to its 'clear and convincing' burden of proof."[35] To be sure, the hearing transcript shows that the IJ thrice stated that "the [g]overnment ha[d] demonstrated by clear and convincing evidence that [plaintiff] is an extremely high flight risk."[36] But elsewhere in the transcript, the IJ found it only "*more than likely*" that plaintiff would not "show up for another hearing or for removal from the United States."[37] This language reflects application of a preponderance of the evidence standard. Clear and convincing evidence, however, is a greater evidentiary showing than mere preponderance.[38] It must "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly

---

34 *Tiboko-Tifuh v. Noem*, No. 26-cv-1215, 2026 WL 1603795, at *3 (S.D. Cal. June 4, 2026).

35 *Anariba v. Shanahan*, No. 16-cv-1928, 2017 WL 3172765, at *4 (S.D.N.Y. July 26, 2017).

36 Pl.'s Mem. Law Supp. Mot. Enforce, Ex. 1 (Dkt 62-1) at 25:4-6; *accord id.* at 25:20-25, 28:5-7.

37 *Id.* at 25:14-17 (emphasis added).

38 *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).

probable.'"[39] The IJ's "mere utterance of the correct standard of proof . . . is insufficient to demonstrate that it was applied when the rest of [the record] demonstrates otherwise."[40]

Notwithstanding the merits of plaintiff's argument, he is not entitled to the relief he requests. As this Court held in denying the government's first motion to dismiss, the relief that plaintiff properly can seek through this as-applied due process challenge (as opposed to a claim brought in habeas)[41] is limited to "a hearing which may or may not result in his release from detention."[42] This Court therefore may not order plaintiff's immediate release while such a hearing remains attainable. The same is true with respect to this Court itself conducting an additional bond hearing.[43] This is particularly true where, as here, an IJ has not yet determined whether plaintiff would pose a danger to the community if he were released.

---

39 *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (quoting CHARLES T. MCCORMICK, EVIDENCE 679 (1954))

40 *Mendoza*, 2026 WL 1470652, at *6; *R.R.M.C.*, 2022 WL 4639674, at *3 (holding that "the IJ's recitation of the correct legal standard is not dispositive" where "[t]he balance of the [record] indicates that the IJ did not hold the government to its burden").

41 The numerous habeas cases plaintiff cites in which courts have ordered immediate release of the petitioner after finding that the ordered bond hearing failed to accord with court orders and due process thus are distinguishable. *See, e.g.*, Pl.'s Mem. Law Supp. Mot. Enforce (Dkt 62) at 15-17 (collecting cases).

42 *Caceres v. Joyce*, No. 25-cv-1844 (LAK), 2025 WL 2223032, at *5 (S.D.N.Y. Aug. 5, 2025).

43 *See* 8 U.S.C. § 1226(e); *Ramos Ramirez v. Blanche*, No. 26-cv-4553, 2026 WL 1999186, at *1 (S.D.N.Y. July 10, 2026); *R.R.M.C.*, 2022 WL 4639674, at *5; *Roman v. Decker*, No. 20-cv-6752, 2021 WL 3173138, at *3-4 (S.D.N.Y. July 27, 2021) (Nathan, J.); *Hamilton v. Shanahan*, No. 9-cv-6869, 2009 WL 5173927, at *3 (S.D.N.Y. Dec. 30, 2009); *see also C.R.C.*, 2026 WL 2283016, at *8 (holding that the proper remedy is a supplemental bond hearing before an IJ absent atypical circumstances requiring the court conduct the hearing itself).

***Conclusion***

For the foregoing reasons, plaintiff's motion to enforce (Dkt 61) is granted only to the extent that the government, no later than September 24, 2026, shall (1) provide plaintiff with an additional bond hearing before an IJ, or (2) release him in the Southern District of New York with all property taken from him at or after his detention, subject to any appropriate terms of supervision as authorized by 8 U.S.C. § 1231(a)(3).

At the bond hearing, assuming that it is held, the government shall bear the burden of demonstrating by clear and convincing evidence that plaintiff, upon release subject to appropriate terms and conditions as authorized by Section 1231(a)(3), would pose a risk of flight or danger to the community. If the government fails to establish by clear and convincing evidence at least one of those two criteria for continued detention, it immediately shall release plaintiff in the Southern District of New York with all property taken from him at or after his detention, subject to any appropriate terms of supervision as authorized by Section 1231(a)(3). Additionally, the government may not invoke an automatic stay under 8 C.F.R. § 1003.19(i)(2) if the IJ grants plaintiff bond.

The government, no later than September 24, 2026, shall file a letter confirming that the bond hearing was held and stating its outcome or confirming that plaintiff was released and stating on what conditions of supervision, if any, he was released.

SO ORDERED.

Dated: September 16, 2026

Lewis A. Kaplan
United States District Judge